IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
(Lynchburg Division)

CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
10/26/2022
LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
      DEPUTY CLERK

**LEROY MCGEE,**
292 Roachs Ln
Dillwyn, VA 23936

    Plaintiff,

v.

**GOOD SPORTSMAN MARKETING, L.L.C.**
**d/b/a GSM OUTDOORS,**
<u>SERVE REGISTERED AGENT:</u>
Cogency Global Inc.
850 New Burton Rd., Suite 201
Dover, DE 19904

**MAINSTREAM HOLDINGS, INC.,**
<u>SERVE:</u>
1820 N. Redding Ave.
Windom, MN 56101

**GRIDIRON CAPITAL, L.L.C. and**
<u>SERVE REGISTERED AGENT:</u>
Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808

**SENTINEL CAPITAL PARTNERS, L.L.C.,**
<u>SERVE REGISTERED AGENT:</u>
The Prentice-Hall Corporation System, Inc.
251 Little Falls Dr.
Wilmington, DE 19808

    Defendants.

Case No. 6:22CV00064

## COMPLAINT

    Plaintiff, Leroy McGee, moves for judgment against the Defendants Good Sportsman Marketing, L.L.C. d/b/a GSM Outdoors, Mainstream Holdings, Inc., Gridiron Capital, L.L.C. and

Sentinel Capital Partners, L.L.C., jointly and severally, and in support of his Complaint, alleges as follows:

## PARTIES

1. Plaintiff Leroy McGee is a citizen of Virginia who resides in Buckingham County, Virginia.

2. Defendant Mainstream Holdings Inc., (hereinafter "Mainstream") is a Minnesota corporation with its principal executive office at 5250 Frye Rd, Irving, Texas. Service should be made on Mainstream at the above-listed address.

3. Defendant Good Sportsman Marketing, L.L.C. d/b/a GSM Outdoors (hereinafter "GSM") is a Delaware corporation with its principal place of business at 5250 Frye Rd., Irving, Texas. Service should be made on GSM at the above-listed address.

4. Sentinel Capital Partners, L.L.C., (hereinafter "Sentinel") is a Delaware limited liability company, with a registered office address of 1820 N. Redding Ave., Windom, Minnesota. Service should be made on Sentinel at the above-listed address.

5. Gridiron Capital, L.L.C. (hereinafter "Gridiron") is a Delaware limited liability company. Service should be made on Gridiron at the above-listed address.

6. As of April 2018, Mainstream was the owner and manufacturer of prominent hunting brands, including, but not limited to, the Big Game brand.

7. It was announced in June 2018 that Sentinel acquired GSM.

8. On or about January 9, 2019, it was announced that GSM acquired Mainstream, including the Big Game brand.

9. On or about November 18, 2020, it was announced that Gridiron acquired GSM.

10. Defendants Mainstream, Sentinel, GSM and Gridiron will hereinafter collectively be referred to as "Defendants."

11. At all times relevant, Defendants, merchants, acted by and through their employees, agents, and servants, who were acting within the scope of their employment, agency, or master-servant relationship with Defendants.

## JURISDICTION AND VENUE

12. Jurisdiction is founded on diversity of citizenship and amount in controversy pursuant to 28 U.S.C. § 1332 as Plaintiff is a citizen of Buckingham County, Virginia and no Defendant resides in, is incorporated in, or maintains its principal place of business within the Commonwealth of Virginia and the amount of controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

13. The court has personal jurisdiction over Defendants as they manufacture and design goods to be sold in the Commonwealth of Virginia, through authorized distributors, and has consistent and significant commercial interactions within the Commonwealth of Virginia.

14. Venue is proper within the Western District of Virginia, Lynchburg Richmond Division, because the events or omissions giving rise to the claims alleged in this Complaint occurred in Buckingham County, Virginia.

## INTRODUCTION AND FACTS

15. This is an action for damages suffered by Plaintiff as a direct and proximate result of Defendants' breach of warranty in connection with the design, testing, marketing, warning, and/or sale of the Cobalt tree climbing tree stand (model CL100A) under the Big Game label.

16. At all times relevant to Plaintiff's Complaint, Defendants engaged in the design, assembly, manufacture, marketing, selling, packaging and/or distribution of tree stands, including the Cobalt tree climbing tree stand (model CL100A), in various states, including Virginia.

17. At all times relevant to Plaintiff's Complaint, Defendant engaged in the creation of safety warnings and instructions which are disseminated to consumers of its tree stands.

18. In 2019, Plaintiff Leroy McGee purchased a new Cobalt tree climbing tree stand (model CL100A) (hereinafter the "Subject Tree Stand") for use as a tree stand.

19. Before use, Plaintiff reviewed the written warnings and instructions on assembly, use, and maintenance that were provided with the Subject Tree Stand.

20. Plaintiff used the Subject Tree Stand during the 2019 and 2020 hunting seasons.

21. After each hunting session, it was Plaintiff's practice to take down the Subject Tree Stand and safely store it in his home or other sheltered space until its' next use.

22. Plaintiff inspected the cables, strap locking device, and looked over the parts of the Subject Tree Stand before each use to ensure it was safe to use.

23. Plaintiff additionally regularly tested the Subject Tree Stand before use to ensure it was safe to use.

24. On or about October 28, 2020, Plaintiff had used the Subject Tree Stand to climb a tree and was starting to set up his bow in the chair to get situated and sit down to begin watching for prey.

25. Suddenly, and without warning, the support cables holding the Subject Tree Stand's standing platform and climbing/sitting platform to the frames of the stands (hereinafter the "Support Cables"), failed, resulting in Plaintiff falling approximately 30 feet to the ground and suffering serious and permanent injuries.

26. Plaintiff's brother-in-law heard a loud noise when Plaintiff fell and went to check on Plaintiff finding him lying on the ground, seriously injured.

27. First responders were called and arrived at the scene.

28. Plaintiff was subsequently evacuated via helicopter to UVA Hospital.

29. At UVA Hospital, Mr. McGee was diagnosed with three fractured ribs, a collapsed lung, broken breast plate and severe spinal and spinal cord injuries, including, but not limited to, burst fracture injuries in the T11-L2, resulting in partial paralysis and loss of use of both lower limbs.

30. Plaintiff suffered permanent and debilitating injuries to his back/spine, legs, and body as a whole that resulted in permanent pain, discomfort, and loss of function and movement.

31. Plaintiff is bringing this action to recover damages from Defendants arising from his personal injuries caused by the failure of the unreasonably dangerous Subject Tree Stand and the resulting fall.

32. Plaintiff's damages include past and future: medical expenses, mental and physical pain and suffering, loss of earnings, impaired earning capacity, permanent disability, and other general and special damages in an amount to be determined by the jury at trial of this action.

## COUNT I: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
**(Unreasonably Dangerous Design and Inadequate Warning)**

33. Plaintiff repeats, re-alleges and incorporates herein all previous paragraphs.

34. Defendants were "sellers" and "merchants" within the meaning of the Virginia Commercial Code.

35. Defendants manufactured and tested the Subject Tree Stand.

36. There was an implied warranty by operation of law that the Subject Tree Stand would pass without objection in the trade and was fit for the ordinary purposes for which such goods are used.

37. The ordinary purposes for which tree stands, including the Subject Tree Stand, were used was as a hunting tree stand.

38. At all times relevant, Plaintiff used the Subject Tree Stand for its ordinary purposes.

39. The Subject Tree Stand is designed with a foot platform that is supported by the two wire Support Cables and a climbing/sitting platform also supported by two wire Support Cables.

40. The Support Cables were encased in segmented rubber and an incomplete plastic sheathing, which allowed moisture to get inside the plastic and rubber.

41. The Support Cables were not stainless steel.

42. The design of the Support Cables allowed them to rust.

43. The plastic sheathing obscured the rust, which was not obvious to the product user.

44. The Subject Tree Stand was unreasonably dangerous because it was not fit for sitting or standing on in an elevated position due to: (1) the Support Cables were unreasonably weak given the intended purpose of the Subject Tree Stand and the Support Cables, (2) the Support Cables were covered by a plastic sheath that did not allow the user to properly inspect the cables, (3) the Support Cables were made of improper or defective materials, (4) the Support Cables were improperly designed to support the weights and stresses of the user or consumer, including Plaintiff, (5) the Support Cables lacked sufficient durability to withstand ordinary and/or foreseeable use due to insufficient or inadequate protection to prevent material degradation and cable failure, and (6) the warnings were inadequate as to properly alert users to these hazardous properties of the Subject Tree Stand.

45. The Subject Tree Stand was unreasonably dangerous for use as a tree stand by virtue of improper design and failure to give adequate warnings or instructions.

46. The warnings or instructions for the Subject Tree Stand were inadequate, in part, in that they failed to instruct the user to replace the Support Cables even if they appeared to be undamaged from outside of the protective sheath.

47. The warnings or instructions for the Subject Tree Stand were inadequate, in part, in that they failed to warn the user that moisture could get in the Support Cable sheath and cause severe damage/corrosion, which could cause the Support Cables to fail.

48. The unreasonably dangerous condition and inadequate warning of the Subject Tree Stand existed when it left the Defendants' hands.

49. Plaintiff used the Subject Tree Stand in a reasonably foreseeable manner.

50. Defendants breached the implied warranty of merchantability.

51. As a direct and proximate result of the breach of the implied warranty of merchantability by the Defendants, Plaintiff suffered serious and permanent injuries, physical pain and mental anguish, past, present, and that which he may be reasonably expected to suffer in the future; inconvenience, past, present, and that which he may be reasonably expected to suffer in the future; medical expenses, past, present, and that which he may be reasonably expected to suffer in the future; lost earnings and loss of earnings capacity, past, present, and that which he may be reasonably expected to suffer in the future; and has otherwise been damaged .

**WHEREFORE**, Plaintiff prays for judgment and an award of execution against Defendants, jointly and severally, in the sum of Thirty-Five Million Dollars ($35,000,000.00), plus

costs of this suit, all applicable interest, and such other and further relief as this Court deems just and proper.

TRIAL BY JURY IS DEMANDED.

                                                              Respectfully submitted,

                                                              _____/s/_____

Daniel Renfro (VSB No.: 74187)
Renfro & Renfro, PLLC
11600 Busy St., Suite 203
Richmond, VA 23236
T: (804) 601-4433
F: (804) 621-2318
dan@renfrolegal.com
*Attorney for Plaintiff*